Mary P. Howe et al.
vs.
Frederick E. Rochon

Eq. No. 8074

RESCRIPT

May 27, 1927

BAKER, J. Final hearing.

This bill is brought to restrain the operation of what is alleged to be a nuisance. The complainants are land

owners adjoining the property owned by the respondent.

The principle of law involved in the proceeding is plain. It has been held that one is bound to use his property so as not to interfere with the reasonable and proper enjoyment of that of another, and the carrying on of business which causes great and disturbing noises and in such a manner as to affect injuriously neighboring property is considered to be a nuisance entitling the injured party to relief.

On this question each case has to be decided on its own facts. It is recognized, however, that persons living in organized communities must suffer some annoyance and inconvenience from each other, being compensated by the advantages of civilized society.

Blomen vs. N. Barstow Co., 35 R. I. 198.

Kennedy vs. Frechette, 45 R. I. 399.

In this case the Court, in addition to hearing testimony, took a view of the premises involved. It is clear that the district in which they are situated is residential. The respondent on the rear portion of his lot, in a structure formerly a barn, is conducting a milk business, including pasteurization and bottle washing. It is the method and times of conducting this business to which the complainants are objecting, and against which they are asking for relief.

It is clear from the testimony that the respondent is complying with all the ordinances and regulations of the City of Providence regarding the operation of such a business. From the evidence and from the view taken, the Court is satisfied that no serious complaint can be made regarding the premises themselves. The building in question is clean, well painted and not offensive in any way.

In the judgment of the Court there is not sufficient evidence to support the allegation in the bill relating to the repairing of automobiles on the premises, nor the allegation in regard to allowing smoke and soot to escape from the property to the injury of the complainant McCallion's property, and as to these the Court finds that the complainants are not entitled to any relief.

The first question of importance to be considered relates to the method of operating the respondent's plant. It appears that he has been conducting a milk business on these premises for upwards of six years, having purchased the business from a man who for a considerable time conducted a like business, including the washing of bottles by machinery. It is also clear that this particular property has been used as a dairy or milk station for many years. Some of the complainants purchased their property prior to this use of the respondent's premises and others thereafter. It would seem that up to within a comparatively few years horses and teams were used in conducting the business on the respondent's premises but more recently automobile trucks have been employed. The complainants have not been seriously disturbed up to within two or three years and there is some evidence to show that the respondent has increased and enlarged his operations to some extent, causing a greater use of these premises and more operation of the machinery thereon.

At the present time there is in the barn used as a dairy a pasteurizing machine and a washing machine. The former makes little noise, the latter some noise. Both of these machines are operated mornings, during a period covering perhaps three or four hours all told. Apparently little use is made of them after the noon hour. Some complaint, particularly by the complainants Howe and McCallion, is made that noise emanates from the machine used to wash the milk bottles.

After carefully considering the evidence on this point, however, the Court does not feel that it would be justified in holding that the mere operating of this machine during a few hours in the morning constitutes a nuisance. The Court is reasonably satisfied that if this machine is operated with the windows in the room in which it is situated closed, the complainants will not suffer any very great annoyance therefrom. The only relief in this connection to which the Court feels the complainants entitled is that the respondent should be obliged to keep the windows closed in the washing room while that machine is being operated.

It appears that an exhaust pipe projects from the side of the barn towards the property of the complainant McCallion. The respondent's barn is situated very close to the lines of his lot, particularly where it bounds the property of the complainants Howe and McCallion. The distance from the foundation of the barn to the property line, only a foot or two, is covered with cement or concrete. While the machinery in the barn is being operated steam and some hot water is ejected from the exhaust pipe in question towards the property of the complainant McCallion. A wooden fence along the property line is considerably rotted, due, the Court believes, to the action of the steam and the water. The complainant McCallion also insists that the vegetation in her garden is also damaged by reason of the steam and the water.

After considering this point with care, the Court believes that the complainants are entitled to relief in this connection and the Court finds that the complainants are entitled to an injunction restraining the operation of the plant with the exhaust in its present position. It would appear from the evidence that the respondent can without great difficulty or without great expense alter the ex-

haust pipe so as to cause the steam to be ejected more completely upon his own premises and so as to take care in some other way of the hot water coming from the exhaust pipe.

The complainants Howe and McCallion also urge that water flows upon their premises from the barn. The Court is inclined to believe this is correct and that the water so flowing constitutes a nuisance. The floor in the room used for pasteurizing the milk is provided with a drain which is connected with the sewer and the Court thinks that most of the water on the floor of this room passes through this drain. On the floor of the wash room, however, there is no drain and the Court is satisfied from the evidence and from the view taken that quite a considerable quantity of water passes out between the sill and the foundation of the barn, runs down the foundation wall of the barn onto the foot or two of concrete separating the respondent's premises from that of the complainants Howe and McCallion and then across the concrete onto the premises of the latter complainants. This water, which has been used in the washing of milk bottles, is undoubtedly milky, soapy and possibly contains chemicals used in the washing of the bottles, and in the judgment of the Court, as the complainants have testified, is a detriment to their premises.

The Court finds, therefore, that in order to relieve this situation as much as reasonably can be done the respondent should install a drain in the floor of the wash room, which drain should be connected with the sewer.

The remaining serious question in the case relates to the time the business is conducted. The testimony shows that the respondent leaves his premises on a truck about two o'clock in the morning with a load of milk bottles. His brother leaves about half-past two, after backing his truck

into, the barn. The respondent returns about 6 o'clock, or soon after, and leaves with another load of milk. At about this time milkmen begin to brink in milk to be pasteurized. The complainants, and particularly the complainants Darby, who live close to the driveway, say that the noise of the trucks passing in and out and of the milk cans and milk bottles is very annoying, waking them up and in some instances compelling them to move their sleeping quarters. The witness Armour also testifies in this connection.

The respondent says that it is customary to deliver milk in the morning and that it will be impossible for him to make his deliveries in the afternoon.

It would seem that for many years milk was handled on the respondent's property without great annoyance to the complainants. Probably the business was smaller than it is at present and undoubtedly the noise has been somewhat aggravated by 'the use of trucks in the place of horse-drawn vehicles.

After considering the evidence the Court thinks that possibly the business can be conducted without unreasonable annoyance to the complainants if certain restrictions are imposed upon the respondents. The Court at this time does not find that the entire operation in the early morning hours should be enjoined. The Court does find that all the handling and loading of the milk bottles should be done within the barn with the doors closed; that the first truck with milk should not leave the premises before 3 a. m.; that during the early morning hours no boys or young men be allowed on the premises in connection with the loading or delivery of milk, and that no milk be delivered at the barn prior to 7 a. m.

There is evidence relating to the use of loud and vulgar language upon the respondent's premises. It is not very clear as to who does this, and the Court does not fel justified in issuing any order in regard to this allegation at this time.

Numerous issues of fact have been framed and the Court believes that those which are material have been answered. It therefore finds that the complainants are entitled to such relief as is hereinbefore indicated.

For Complainants: Joseph H. Coen.

For Respondent: John J. Cosgrove and Frederick J. Berth.